UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

Jeanna Sue Reedy,

    Debtor(s).

_____/

Case No: 8:18-bk-9240-RCT
Chapter 7

# CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND LISTING AGENT TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 AND 330

Stephen Meininger, as Chapter 7 Trustee (the "Trustee") for the above referenced debtor(s) (together, the "Debtor"), by and through the undersigned counsel, files this Application for entry of an order authorizing retention of (1) BK Global Real Estate Services ("BKRES") under the terms set forth in the agreement (the "BKRES Agreement") attached to BKRES' Affidavit of Disinterestedness (the "BKRES Affidavit") and (2) Tracey Bitonti of Irongate Inc., Realtors ("Listing Agent") under the terms of the agreement (the "Listing Agreement") attached to Listing Agent's Affidavit of Disinterestedness at (the "Listing Agent Affidavit"). In support thereof, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

Trustee requests approval to retain BKRES and Listing Agent, at no cost to the estate, to negotiate with and persuade the first lienholder on certain real property in which the estate has no equity to (1) allow Trustee to sell such property at the highest price that the market will bear, (2) waive the resulting deficiency claim and (3) pay a 11 U.S.C. § 506 surcharge to provide a carveout for the benefit of the estate and pay all other sale expenses, including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court.

1

BKRES and its affiliates have proprietary technology and a national team of experienced loan servicing specialists, asset managers, negotiators, trustee relation managers, real estate brokers and agents, closing specialists and attorneys with extensive experience in procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

The proposed agreements are attached and provide that BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as a 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carveout for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain secured creditor's agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

### JURISDICTION

This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

### BACKGROUND

On 10/26/2018 the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

The Trustee held and concluded the 341 meeting on 11/29/2018.

The Debtor is the sole owner of real property located at **4079 Navajo Avenue Dayton, OH 45424** (the "Property"). The Debtor has not claimed the Property as exempt and, upon information and belief, the Property is vacant.

The Debtor has equity in the Property. The Debtor's schedules reflect that the Property is currently worth $75,000.00, but is subject to a first mortgage lien (the "Senior Mortgage") in favor of Quicken Loans, Inc. (the "Secured Creditor") in an amount exceeding $57,700.00.

The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to:

    a. sell the Property to whichever third party Trustee determines to have made the best qualified offer during a public sale approved by the Court;

    b. buy the Property from the Debtor's estate if (and only if) no such offer is made;

    c. release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

    d. agree to a 11 U.S.C. § 506 surcharge to pay all of the expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

pocket expenses, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

Trustee expects BKRES and Listing Agent to obtain Secured Creditor's Consent and bring a separate motion seeking an order approving the sale of the Property (the "<u>Motion to Approve Sale</u>") within several months of the entry of the order sought by this Application.

By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to procure Secured Creditor's Consent, and (b) approve Secured Creditor's payment of the fees described below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

### APPLICATION

Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 330 of the Bankruptcy Code permits the Court to "award to a trustee... or a professional person employed under section 327...(A) reasonable compensation for actual, necessary services rendered [by such party]... and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity.

The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear. The Trustee further believes that such a sale is in the best interest of the Debtor's estate, but can only be achieved if Secured Creditor's Consent is first obtained. That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

In no event will the estate have any obligation to pay BKRES or Listing Agent. The terms of the BKRES Agreement and Listing Agreement provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission at closing in accordance with the order approving the sale.

BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto is an Affidavit of Disinterestedness of BKRES. BKRES also attests, pursuant to

Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent.

Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto is an Affidavit of Disinterestedness of Listing Agent. Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES.

## Conclusion

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code.

Dated: January 18, 2019

Stephen L. Meininger
Chapter 7 Trustee
707 N. Franklin Street
Tampa, FL 33602
813.301.1025

CERTIFICATE OF SERVICE

I certify that on January 18, 2019, a true and correct copy of the foregoing was provided by U.S. mail and/or electronic delivery to:
U.S. Trustee, USTPRegion21.TP.ecu@usdoj.gov;
Jeanna Reedy, 1071 Donegan Road, Lot 1151, Largo, FL 33771
Charles Moore, Esq., cgmpa1@aol.com

Stephen L. Meininger, Trustee

6

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re:                            Case No. 18-09240
                                   Chapter 7

Jeanna Reedy

_____Debtors_____ /

### AFFIDAVIT OF TRACEY BITONTI IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND IRONGATE INC., REALTORS TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

STATE OF OHIO             )
                                  )
COUNTY OF Montgomery   )

       Tracey Bitonti, being duly sworn, says:

    1.     I am a real estate agent duly licensed by the State of Ohio.

    2.     I am an agent of Irongate Inc., Realtors a Ohio Corporation, with corporate offices located at 4461 Far Hills Ave Dayton, OH 45429 ("Listing Agent").

    3.     I am familiar with the Application to Retain Irongate Inc., Realtors, filed by the Trustee ("Application") and the property described therein.

    4.     I believe that I am experienced and qualified to represent the Trustee in connection with the marketing and sale of the real property located at 4079 Navajo Avenue Dayton, OH 45424 (the "Property").

    5.     Irongate Inc., Realtors has agreed to accept employment pursuant to the terms and conditions set forth in the Application and the proposed commission structure. Based upon my experience and knowledge of the real estate market, I believe that the commission structure proposed to be paid to Listing Agent does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

1

      6.      Neither I nor any member of Irongate Inc., Realtors hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

      7.      To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtors, their creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

      8.      I represent no interest adverse to the Debtors or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Tracey Ribohti of
Irongate Inc., Realtors

The foregoing instrument was sworn to and subscribed before me this _8_ day of _January_, 20_19_.

NOTARY PUBLIC

_____
Notary Public, State of Ohio

KARREN L. BERNHARDT, Notary Public
In and For the State of Ohio
My Commission Expires: Mar. 1, 2020

Type, Stamp, or Print Name as Commissioned

2



# EXCLUSIVE RIGHT TO SELL CONTRACT
ADOPTED BY THE MULTIPLE LISTING SERVICE OF THE DAYTON REALTORS®



This Exclusive Right to Sell Contract ("Contract") is made between **Stephen Meininger, BK Trustee for the Estate of Jeanna Ready** ("Owner," whether one or more), whose address is _____ and **Irongate Realtors** ("Broker"), whose address is **4461 Far Hills Ave. Kettering, OH 45429**.

1. **Exclusive Right to Sell.** In consideration for Broker's efforts to procure a purchaser, and for Broker's acceptance of the duties as Owner's exclusive agent, Owner grants to Broker the exclusive right to sell the real property (the "Property") located at and commonly known as (use Street location and lot number or size): **P7000202758** **4079 Navajo Dr Ave. Dayton, OH 45424**. The Property includes the features shown on the Profile Sheet attached to this Contract.

2. **Listing Period.** This Contract shall begin on the date and time last signed below and shall expire at 12:00 Midnight on _____ (the "Listing Period").

3. **Terms of Sale.** The Property will be offered for sale at a price of $ _____. Owner agrees to convey marketable title to the Property by general warranty deed with release of dower.

4. **Brokerage Fee.** If the Property is sold during the Listing Period, Owner shall pay Broker a brokerage fee of (insert dollar amount or percentage of total sales price) **Six Percent (6%)**. This right to a brokerage fee applies to any sale during the Listing Period, whether the Property is sold through Broker, by Owner's own efforts, or otherwise, and applies regardless of the amount of the sales price accepted by Owner. For purposes of this Contract, the Property is deemed "sold" when (a) Owner receives a written offer to purchase the Property for not less than the price stated in Paragraph 3, and otherwise upon the terms and conditions set forth in this Contract, from a ready, willing and able purchaser; or (b) Owner conveys or enters into a contract to convey the Property on any other terms and conditions acceptable to Owner. In addition, Broker shall be entitled to the same brokerage fee if the Property is sold within the **45** day period following the expiration of the Listing Period (the "Terminal Period"), to any person (or anyone acting on that person's behalf) with whom Broker had made contact relative to the sale of the Property before the expiration of the Listing Period. However, this right to a brokerage fee with respect to a sale during the Terminal Period shall not be operative if the Property is then listed with another real estate broker who will receive the brokerage fee.

5. **Other Brokers.** Owner authorizes Broker to list the Property in any Multiple Listing Service. Owner authorizes Broker to offer compensation in accordance with Broker's company policy, which is to offer compensation to (check if applicable): _____ Subagents   Compensation amount _____
**X** Buyer Brokers Compensation amount **2%** _____
(State compensation as dollar amount or percentage of sales price)
Owner (check one) **X** has _____ has not received the Consumer Guide to Agency Relationships provided by Broker. If the Consumer Guide to Agency Relationships provided by Broker so states, all licensees in the brokerage are hereby appointed to represent Owner.

6. **Dual Agency.** If a prospective buyer of the Property is represented by Broker, or any agent of Broker, or if the prospective buyer is an employee or agent of Broker, Broker will be considered a "dual agent" (that is, agent of both Owner and the buyer) in the transaction. If this situation arises, Owner is willing to permit Broker's dual agency role, subject to Owner's consent as outlined in the Agency Disclosure Statement.

7. **Owner's Representations.** Owner represents to Broker that (a) Owner is the sole owner of and has exclusive control of the Property; (b) Owner is fully authorized and able to enter into and perform this Contract; (c) to the best of Owner's knowledge, no latent defects are present in the Property, no toxic, explosive or otherwise hazardous substances have been stored, disposed of, concealed within or released on or from the Property, and no other adverse environmental conditions affect the Property, except as set forth in the Residential Property Disclosure Form and (d) Owner has been advised of the requirement to provide to prospective purchasers a Residential Property Disclosure Form in accordance with Ohio law.

8. **Seller Content License.** Seller may provide content, such as photos or videos of the Property ("Seller Content") to the Broker. Seller grants to Broker a non-exclusive, perpetual, world-wide, transferable, royalty free license to sub-license (including through multiple tiers), reproduce, distribute, display, perform and create derivative works of the Seller Content. Seller warrants it has the authority to provide this license, and that Seller Content does not violate any third party intellectual property rights or laws. Seller agrees to execute any further documents that are necessary to effect this license.

**Owner's Initials:** _____

**DAYTON REALTORS®**
**EXCLUSIVE RIGHT TO SELL CONTRACT**

Property Address: __4079 Navajo Ave. Dayton, OH 45424__

9. **Fair Housing Statement.** It is illegal, pursuant to the Ohio Fair Housing Law, Division (H) of Section 4112.02 of the Revised Code and the Federal Fair Housing law, 42 U.S.C.A. 3601, as amended, to refuse to sell, transfer, assign, rent, lease, sublease or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in Section 4112.01 of the Revised Code, ancestry, military status as defined in that section, disability as defined in that section, or national origin or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services.

It is also illegal, for profit, to induce or attempt to induce any person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes.

10. **Lead-Based Paint Disclosure.** Owner has been advised that if the Property contains housing constructed before 1978, Owner is required (a) to provide to the purchaser a federally approved lead hazard information pamphlet; (b) to disclose to Broker and the purchaser the presence of any known lead-based paint and/or lead-based paint hazards on the Property; and (c) to provide to Broker and the purchaser any additional information, records or reports in Owner's possession or available to Owner pertaining to lead-based paint and/or lead-based paint hazards in the Property. In addition, Owner must provide to the purchaser a 10-day opportunity to conduct a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards, unless waived by the purchaser in writing. Finally, any contract for the sale of the Property shall include an attachment containing a Lead Warning Statement as well as the information and disclosures described above. Owner agrees to comply with these requirements and to indemnify, defend, and hold Broker harmless against any claims, damages, losses or expenses, including attorney's fees, arising from Owner's violation of these requirements.

11. **Use of Personal Information.** In performing services under this Agreement, Broker may collect from Owner non-public personal information which may include, but is not limited to, financial information, social security numbers and account numbers ("Personal Information"). Owner authorizes Broker to disclose this Personal Information to third parties including (i) mortgage companies and banks, (ii) insurance companies (including title insurance companies), and (iii) real estate service providers, to the extent necessary to facilitate and effect the transaction(s) contemplated by this Agreement. Broker will not otherwise disclose Personal Information to third parties except as authorized by Owner or as required by law.

12. **Miscellaneous.** (a) If the Property is located in a jurisdiction requiring a housing inspection before transfer, Owner shall immediately make application for any required housing inspection and furnish Broker with a copy of the resulting certificate. (b) Owner agrees to make the Property available for showing at all reasonable times by Broker, its associates and other brokers designated by Broker. (c) During the Listing Period, Broker may place "For Sale" signs on the Property. (d) Owner (**please initial choice**) __X__ authorizes _____ does not authorize the use of a lock-box. If a lockbox is used, Owner releases Broker and Broker's agents from any liability resulting from the use of the lockbox except any loss or damage resulting from the gross negligence or intentional acts of Broker or Broker's agents. (e) Broker is authorized to disclose all information pertaining to the Property to all parties involved with its marketing and/or sale, including all MLS. participants. Broker is further authorized to place information about the Property in any other informational service medium to advertise and promote the sale of the Property.

_____

_____

13. **Signatures (Owners of Record).** Signatures are required below by all parties with an interest in the property or their authorized legal representative(s).

Owner _____ Date _____ Time _____ (AM / PM) Phone _____

Owner _____ Date _____ Time _____ (AM / PM) Phone _____

The undersigned Broker accepts the exclusive right to sell agency for the Property on the terms stated above.

Broker __Irongate Realtors_____ Date _____ Time _____ (AM / PM) Phone _____

By __Tracey Bitonti_____ Date 1/8/19 Time _____ (AM / PM) Phone _____